Good morning, Your Honor. May I address the Court, please? Yes, would you tell us your name, please, and who you represent? Judge, my name is Lawrence Wolfe Levin. I represent Mr. Noel Christopher. I had a colleague who was involved in the writing of the brief, Ms. Michelle Ferrigan, but she couldn't be here because she had a baby. Okay, good. It's nice to see you. Congratulations. Judge, thank you. And Counsel? Good morning. My name is Rita Kilatris, and I represent the people of the State of Illinois. Great. Welcome. All right, so 15 sides for both sides. You're going to want to reserve a few minutes for rebuttal, Mr. Yes, Your Honor. You said how much? Fifteen.  Okay, good. Thank you. Great. You may begin whenever you're ready. May it please the Court, Counsel? Your Honors, my name is Lawrence Wolfe Levin, and I'm here representing Mr. Noel Christopher, the defendant appellant in this particular matter. There are certain issues which come before the Court which we believe mandate your attention. And in doing so, I'm mindful of the recently allowed authority that came out on People v. Turner, which was issued by Judge Van Bakken, who sat by designation in the Seventh Circuit. I would indicate to the Court that I'd like to address those particular factors. Initially, I point out to the Court, this is a unique case. The matter was tried before Her Honor Judge Jamica Stevenson relative to certain narcotics which were alleged to have been found at a particular residency. The jury was empaneled following the denial by Judge Judy of the defendant's right to proceed under a Franks motion, the Franks v. Delaware. Because there was a split in the district relative to Cairo and Garrido, we would also put that in our brief relative to what we're asking the Court. But I think the seminal question was that a jury was empaneled, and the actual chemist in this particular matter was unable to testify or chose not to testify. A key factor in this particular matter was the failure of this particular chemist to testify and the State's failure to, number one, explain why this particular chemist did not testify. Number two, more important than that, they brought in the chemist, Ms. Neal, to testify in the place of the original chemist. I'm aware of the cases that have been cited by the State in this particular matter. With all due respect, I think there are certain factors which must be pointed out. In this particular instance, Judge Stevenson kept pointing out and stating, despite our motions in limine, that the information from the chemist in this particular matter was not being introduced for the truth of the matter to be asserted. That's incorrect, and I say that respectfully, not to be disparaging to a judge, but as to what took place. But, Counsel, let me stop you for a second. Under Federal Rule 703 and adopted by Wilson v. Clark by our Supreme Court, an expert can rely on hearsay in formulating one's opinions if that hearsay is something ordinarily relied upon by experts in that field. For example, doctors can look at a chart and form opinions based on that chart. Doesn't that answer the question here? No, it doesn't, Judge Gallagher. Tell us why not. It doesn't answer it because in those particular instances, doctors or even relative to forensic experts are rendering a scientific opinion relative to what it is. That still leaves the jury the area to make inquiry as to whether or not, based on a reasonable scientific certainty, it was more likely than not. When the chemist in this particular matter testified from the notes of a prior chemist, it was being introduced not for opinion testimony. It was being introduced for the truth of the matter to be asserted. Mr. Levin, so that I'm clear, tell me specifically what evidence you're complaining about, because it was my understanding from reading the record that she reviewed the report and the tests that were run, and based on that information, she expressed an opinion. If that's not what she did, tell me the evidence that's objectionable. Well, Judge Nebel, I think the important thing that's objectionable is under the case of United States versus Melendez-Diaz, there's a question as to the manner, what was done, the tests that were performed, the subjectivity, and actually what was in the packets which were never opened or examined. But in that case, in the Melendez case, didn't they simply introduce some affidavits? There was no witness testimony. Isn't that the case? Yes, Judge, but they used a certificate of analysis, but they did the United States. They didn't do that here. No, sir, there was a live testimony, but the question still remains, that if somebody says that something is something, there has to be proof. It's often been said that when something should be examined by a chemist in a particular matter. But didn't she express her own opinion as to the contents of those substances? Based on the actions of another chemist, whose unavailability was not explained. I mean, that's what you have a problem with. In other words, you would have had less of a problem if she had said, I reviewed Wasikowski's notes, and as a result of reviewing the notes and my expertise in this area and blah, blah, blah, I have an opinion to a reasonable degree of scientific certainty that this is narcotics or whatever. Your problem is that what she said was, and I'd like to check the record, because you say this in your brief, but it's not, there's not a page cite. Your problem is that all she could say was that Mr. Kruski's results led her to believe that the items tested were not. That is correct, Judge. So it's a fine distinction, but your problem is that technically speaking, she did not provide the opinion as usually is provided in the context of the Wilson v. Clark exception, which is, you know, I have expertise, I review the notes, I now have a conclusion. Instead, it was I have expertise, I review the notes, I am relying on Kruski's conclusion to reach my conclusion. So, you know, I'd have to see exactly what she said, because I know that there's not a page cite, but is that the nature of your argument here, or is there something else? Yes, Judge, that's part of it. More important than that, I believe that the testament of experts does not necessarily consist of a neutral scientific testing. I believe that in and of itself, chemists in these particular matters are subject to particular forays and have problems. The uniqueness is not there, that they work for somebody and their actions relative to using a gas spectrometer, which we use in this particular matter, are subject to interpretation. Counsel, let me stop you there, because you're asking us to go down a road that no one's traveled before. In a medical case, if you have a doctor testify to various tests, and maybe people would interpret the test differently, or maybe it's a diagnosis based on symptoms, and the doctor says, I've reviewed the chart, and I think that based on a reasonable degree of medical certainty, my opinion is that the doctor did not deviate from the standard of care, or the doctor did the proper thing, or the doctor used the right surgical technique, or whatever it was, or didn't need to order that test, or whatever. They're doing that based upon the records, and they did not prepare those records. They were not in the room when the records were prepared. They did not observe the patient. Oftentimes, they've never even seen the patient, and Wilson v. Clark says, that's okay. So what happened here is you've got someone who I understood from the briefs retired, and then this new chemist comes along and says, I've reviewed his test results. They appear to have been done properly, and there's no dispute here, I don't think that they were done improperly, you're not trying to say, well, we shouldn't rely on those results because they may have been done improperly. That's the first time we've heard that one. So then she says, I'm relying on these results. We all rely on these results. We rely on the tests done by other people all the time, and in my view, in my opinion, my view, whatever word you want to use, they're accurate, and this is what it was. It was positive for drugs. How is it different than the medical case? It's much different, Judge, because one is being done as an opinion testimony, which does not invade the problem. Are you saying she didn't use the word opinion, therefore it's not an opinion? That's correct. Is that what you're saying? That's correct. Is that your opinion to a reasonable degree of scientific certainty? That's correct. Okay. And in this particular instance, we don't know the interpretation. I'd like to turn to the Turner case, which was recently decided by Judge Van Bakken, and was added by designation. I think the important thing in that particular matter is the chemist who testified in the Turner case was an individual who reviewed the particular results of a prior chemist that was peer-reviewed regarding it and was a supervisor of the individual who did not testify. We don't have this in this particular matter. We have an individual who had no contact with this particular packet, say what she was shown on the date in question. Was she working there at the time when he was there at the same time? Or did she come in after? I read in the briefs that he retired. Am I wrong about that? Yes, he retired, Judge. He retired. Okay. And were they working together? I mean, would she have been in the building at the time? Or would she have been his, you know, his underling or something at that point? Judge, there was nothing in the record as to whether there was anything relative to. Okay. But if, in fact, that had been the case, that was not reported before Judge Stevenson as the law judge. And we don't even know if she was sitting there watching it being done. We don't know anything about that. But there's no suggestion she was. Okay. I agree. So, consequently, by virtue to explain away Turner and the prodigy of cases that flow from Turner and to bring the court back to Melendez-Diaz and the statements in that particular matter relative to the court, I think that it can be explained away by virtue of what took place. Your opponent cites the page 527 of the record. Now, I must tell you, I did not look at page 527, but I certainly will. And your opponent indicates that, you know, the conclusion reached said that based on her training and education, she formed an expert opinion within a reasonable degree of scientific certainty as to what the substance in each exhibit contained and that it tested positive for psilocybin, hallucinogen found in mushrooms, cannabis, cocaine, and ecstasy. So, I mean, if that, in fact, is the opinion that was rendered, there's no problem with the form, the technical form that that opinion was offered. Do you have a problem with the way she reached that opinion? Yes, Judge, I do. And that's the very gravamen of my appearance before the court in the statement for it. Would you agree, though, that the attorney does say that Melendez-Diaz did not do away with Federal Rule of Evidence 703? I would agree that that's contained in Judge Van Vakken's opinion. However, I believe that that's subject to discretion by virtue of the four corners of the opinion, which was rendered by the Seventh Circuit. I would also point out respectfully, Judge Gallagher, that it is my understanding, and subject to the interpretation of the court, that Illinois sets its own standard and its own rules and is somewhat more restrictive in certain aspects of what's required. That's true. The Federal Rules provide for a broad scope of information which can be utilized, whether it be hearsay or something in that particular nature. Or seemingly narrower in hearsay. Yes, Your Honor. And by virtue of that particular factor, that's something to be considered in this particular matter. Thank you. I would submit further to the court that under the tangential circumstances in this matter, the questions in Turner give rise to questions that should be brought before the court regarding the efficacy of what was done. Scientific tests are subject to interpretation. We do not know, nor has it been shown, how the chemist, the gentleman's name, Kruski, may have interpreted the data differently, may have done it a different way. These are tests that are subject to an interpretation, Judge Gallagher, that one may or may not make. They're colored by bias. They're colored by prejudice. The gas spectrology test is something that needs interpretation, and subsequently either individual or any individual who reviews it. And what I'm stating to the court. Did you object on that basis in the trial court? Yes, I did, Judge. Okay. You're saying the tests were not accurately performed or may not have been accurately performed. Yes, Judge. And I brought out the fact that. Wouldn't that require that you'd have to bring in the live person every single time in every single case? Yes, Judge. In certain instances it would, unless you gave me a statement. If we were to write an opinion and say in this view we agree with you and it has to be sent back because we didn't have the person perform the test and other people cannot rely on the test performed by somebody else, wouldn't that open up a Pandora's box? Judge, yes, it would open a Pandora's box, but it would be opening that Pandora's box in the interest of justice and what's necessary in order to protect the rights of confrontation under the Crawford case, which I believe is on Four Squares, Crawford v. Washington, in relative to what's invalid. We know it well. Well, I'm sure you are, sir. I apologize. No, no, it's okay. We know it well. The problem with the Crawford situation is that wouldn't you agree here that the only testimony that's being offered for the truth of the matter asserted is her opinion and all the testimony leading to that opinion is not being offered for the truth of the matter asserted but being offered under Wilson v. Clark analysis to show the steps that were taken in terms of reaching that opinion. So Crawford really just applies to the opinion as opposed to the testimony, which is another question. But the point is the only substantive evidence that truly is being offered here is the expert's opinion. You would agree with that, would you not? Yes, Judge, I would, except for the fact in order to come to the expert's opinion, which is what I tried to respectfully point out to Judge Stevenson in our motion in limine, which we litigated initially before trial and then subsequently during the trial to preserve what we believe was error and still believe was error, there is a difference between scientific opinion, which is relative to cause of death, how the fire was started or something was done, as opposed to what actually a substance is. Black is black, green is green, yellow is yellow. Somebody can come in and say that I believe somebody may have died as a result of homicide with the suggestion that it was done by shooting. To answer your question, again, to revisit it, Justice Gallagher, when a doctor comes in and testifies as an expert from cold reports, that is opinion testimony which a judge or a jury can utilize or disregard based on what takes place. He's had the opportunity later on to examine certain records, perhaps slides or other things. In this particular matter, that was not the case. You had a chemist coming in, a chemist that comes in and for no reason, no suggestion or reason, looks at different people's notes and makes a ventured opinion as to what may or may not be. There was no reason relative why she or another chemist could not, under the circumstances, have examined that packet, tested it, determined what it was, and gone from there. Okay. I understand your point. I would submit to the Court that the next point I'd like to move on to respectfully is the point regarding the search warrant in this particular matter. Judge Judy, Judge Don Judy of the circuit court, heard arguments relative to this particular matter. In that particular argument, we believe we presented the necessary requisite alibi testimony, which would be specific in this matter to trigger a Frank's hearing. But, counsel, before we get to that issue, we need to address the question as to whether or not all those documents are in the record. Are they in the record? Judge, I believe that they were. Was there a supplemental record file containing all those documents? Yes, Judge, there were. There was a subsequent. May I address the Court at that point, sir? Certainly. I bear the full responsibility, Judge, for the preparation of the record in this matter. I went to the clerk of the circuit court at 26th and California. I asked them to prepare the record in this particular matter, gave them the requisite notice, and asked that that be properly done. I subsequently went to the individual court reporters in this matter, asked that it be prepared. When I was put on notice by counsel that there was a question as to certain documents, which may have not been received or made part and parcel of the record in this particular matter, I immediately took the steps to supplement the record so there would be no reason for delay or any suggestion that the documents, which may not have been available according to the state in this particular matter, had been brought forth. So you're telling me a supplemental record was filed that contains the people's written response, the defendant's motion to quash the search warrant, the search warrant itself, and I think there's another document. All those documents have been included in a supplemental record. Judge, I don't have it in front of me. Whatever was requested at the time, which I had in my possession, I immediately had filed with the clerk of the court. So the search warrant, the search warrant affidavit, and the people's written response, all of those documents are included in a supplemental record. Judge, I can't stand before you and say that that's correct because I have not seen that in my preparation. I believe that I complied with what was requested and what was missing in this particular matter. Proceed. Judge Neville. Proceed. Judge, independent of that and with all due respect to the court, I think that before Judge Duty we made the basis relative to triggering of the Franks motion under Cairo. There is a split in the particular first district as to which is appropriate or which is correct. Under the tangential circumstances, alibis have been given and there was enough sufficient relative to the two individuals who submitted affidavits in this particular matter on Mr. Christopher's behalf regarding where he was, his whereabouts, to at least force the court to do something relative to that particular factor. The third basis in this particular matter, Your Honors, is the chain in this matter. Extensively we've talked about the particular chain. While an imperfect chain is certainly permissible in certain instances, we believe that under the totality of the circumstances that the chain was not complete and was not correct. We objected at trial in order to preserve what we believe was there in this matter. Turning to the last point. Counsel, just one question. One question with respect to that. Do you have any evidence that the evidence was tampered with or altered in any way? No, Judge, I don't. But I did bring out, and it was brought out by Ms. Farragut in her cross-examination, that there were inconsistencies relative to what was logged in and what was actually shown. There was a blue powder which was alleged to have been involved in, but when Ms. Neal testified she was dehorsed or unable to say anything relative to blue powder. But does that issue go to weight rather than to the admissibility of the evidence? No, sir. I think it goes to the admissibility because if something isn't properly done, cataloged, logged in, or brought and made a part to the chemist, the integrity of the exhibit would give rise to not allowing it to be brought. I have to tell you something. I'm the author of People v. Gibson, which you cited, and we said it did go to sufficiency, and the Supreme Court subsequently wrote People v. Woods and said it goes to weight. So, you know, much as I hate being contradicted by anybody, but especially the Supreme Court, we have to follow the law, and they've said now that it's weight, not sufficiency in Woods. I'd much rather we adopted your position. I thought you would. Thank you, sir. I think the – One of my concurring justices here. I'm aware of that also, Judge, respectfully. The last matter, and I don't take it lightly when I say this to the Court, I think that if the record was read in this particular manner, there's a question of sufficiency of the evidence in this case, and a substantial question of sufficiency of evidence in this particular case. An individual went on vacation. He allowed somebody to stay in his residency. He came back. A search warrant was executed. He explained to the ladies and gentlemen of the jury and gave a full explanation as to his lack of culpability, his lack of knowledge, and any type of information regarding narcotics or narcotics-stealing activity. He took the witness stand in this particular matter and at that particular time doped himself up to cross-examination to be suspect as to anything which was brought before the Court. Mrs. Christopher came before the Court and also testified regarding going to Las Vegas, coming back, the existence of Ty Smith, and the inability of her to say that at any time her husband, Noel Christopher, had been involved in narcotics, narcotics-stealing, or on any particular occasion was she aware that there were narcotics in the apartment. There are 10 officers that were supposed to come in on a search warrant that used a battering ram in order to get into a place with a search warrant. There's no suggestion that Noel Christopher, the object and the defendant and the appellant in this particular case, did anything to hide, secrete, throw away, or put. There's no suggestion that there was anything on any of the narcotics which would give rise to the fact that he was either physically in possession relative to fingerprints as was brought out in the record, or more importantly, in the record itself, anything that would inculpate him regarding this particular matter. Out of the 10 officers which came forward in this particular matter, your honors, only two testified, and they were severely impeached. And I can say they were severely impeached because I'm the one who impeached them. I'm the one who went after them. I'm the one who asked for the specifics as to how, what, why, and where. And each one was unable to account for different things relative to the location of marijuana on a desk or items which were in a duffel bag or actually seeing something that was in a bedroom. I would submit to the court respectfully that the defendant appellant, Noel Christopher, would ask the honorable court to reverse this conviction for the crimes he's charged or, in the alternative, reverse the remand. I thank you, Your Honor. I appreciate it. Thank you, counsel. I please the court once again, Rita Kalachis, on behalf of the people. Turning to the first issue that defense counsel addressed, the Confrontation Clause issue. Ms. Neal testified as an expert in forensic chemistry, and she reached her own independent conclusion based on documents that she reviewed by Dr. Kresge, that were generated by Dr. Kresge, that within a reasonable degree of scientific certainty, the substances seized from the defendant's apartment contained all the drugs that were the subject of this case, cannabis, cocaine, silencing. Counsel, can you tell me exactly what Ms. Neal reviewed? Okay, Ms. Neal reviewed several things. She reviewed Dr. Kresge's handwritten notes, where he contemporaneously took down exactly what he was doing, how he opened the packages, looked at them, weighed the samples, conducted all of the different tests, the gas chromatology and mass spectrometry tests, and all the other ones that were mentioned. So she also reviewed tests in addition to his report. Exactly. So not only did we have his report showing that he conducted these tests and what the results of these tests were, she was also looking at the printed graph results that were generated by the instruments that Dr. Kresge used. And she testified to that. That you're looking at the graph results? That's in the record? Yes, that's on page 527. Okay. She also looked at Dr. Kresge's report, and when she rendered her opinion, she rendered it based on her education, training, experience, and all of the items that we have just reviewed. Pursuant to Illinois Supreme Court law in our state, Nieves, Posh, Williams, Johnson, and Posh, and then Williams, Johnson, and Johnson from this district all teach and instruct us that it is proper for an expert to testify based on another expert's testing, notes, even conclusions and findings. So I'm going to check the record, but it's spun a little differently in each of the briefs. I mean, your brief indicates that she gave the traditional opinion. You know, based on my education, my review of the reports, my review of the graphs, et cetera, I've come to a reasonable degree of scientific certainty I have the following opinion that she gave her opinion. Yes. Whereas the defense brief seems to spin it to say that, you know, she came to the same conclusion that Mr. Kresge had reached. So, I mean, I will check it, but you're taking the position that she, in fact, gave her own opinion based on the review that she did. Yes, and she did that repeatedly throughout her testimony. Okay. Did she testify that her opinions were consistent with Mr. Kresge's opinions? She stated that, you know, these are the results of the tests, and based on these results, my expert opinion is thus. She never said, this is Dr. Kresge's expert opinion, and I agree with his opinion. She never said that. So also under Wilson v. Clark, as you discussed with defense counsel earlier, and federal rule 703, her testimony was proper as an expert's testimony. Now, if we, by the defense argument, that somehow Ms. Neal was not entitled to rely on all of these findings and conclusions of Dr. Kresge and his testing, then that would swallow up the entire Wilson v. Clark and federal rule 703. That would swallow up the entire concept of experts relying on other experts' analysis. So Crawford applies only to hearsay statements offered for the truth of the matter asserted. Here we do not have any hearsay statements offered for that purpose. All we have is, first of all, there was nothing entered into evidence. None of these documents that Dr. Kresge generated or looked at or any of the graphs were entered into evidence. The only way we know about them is through Ms. Neal's testimony, which is exactly what she can do as an expert. So the only piece of substantive evidence that we have in this case is her opinion that's based on everything she has reviewed. I also agree with that. I agree that the only substantive evidence that she offered was her opinion. Everything else was by way of the Wilson v. Clark exception, which allows her to rely on hearsay for purposes of reaching an opinion. But in this case, Crawford doesn't even apply when we don't have hearsay and we don't have any admitted documents like we did in Melendez-Diaz or even McClanahan in our state. Were the tests and the reports and everything, they were never admitted into evidence? No. Okay. Never. So that's why you don't have the properties. As a matter of fact, Defense Mr. and Mr. Wolff-Levin I think showed Ms. Neal a copy of Dr. Kresge's report, but that was the extent of it. It was never entered. To refresh recollection or something like that, but it's not. Yeah, they were never admitted as evidence. Never. Okay. And counsel noted that the Turner case was different from the case at Barr because there the expert testified as an actual peer reviewer of the non-testifying expert in that case. Here the situation is quite different. There's no qualitative difference with Neal testifying to what Dr. Kresge did because she did testify in her role as a peer reviewer, not his peer reviewer. She didn't review that particular case when it was generated, when it happened, when he did all these findings and conclusions, but she actually did what a peer reviewer does. She looked at his notes, at all the procedures and protocols that he followed, determined that he followed them correctly, so she really stood in the shoes of a peer reviewer when she testified in court and when she rendered her expert opinion. Counsel, let me ask you this question. Rule 703 is predicated on the fact that the underlying evidence that forms the basis for the expert's opinion, it must be of a type reasonably relied upon by experts in the particular field. The information that Ms. Neal relied upon, is that information that's reasonably relied upon by experts in this field? Yes, Your Honor, and we know that from looking at the two federal cases, Turner and Moon. Well, normally that's required as part of the foundation for purposes of eliciting the opinion. Normally that question is required to be asked of the witness before you can proceed down the road of having the witness. Correct, and in this case, counsel never objected on that basis. So that question was never asked? It was never asked and it was never objected to. Its absence wasn't subjected to. Well, I think he would say he objected to it because he objected to the notion of having the non-examining expert testify with respect to the opinion of the substance. But if I may... But this goes to the foundation, I understand what you're saying. Yes. Okay, I got it. Moving on to the next issue, which is the Franks issue. It is very clear that this case is, from the beginning, outside of the scope of Franks, which applies only to governmental misconduct. And next, the defendant did not make a substantial preliminary showing that John Doe Affion deliberately or with reckless disregard for the truth included materially false statements in the search warrant affidavit. And therefore, the trial court did not abuse its discretion in denying the defendant's motion for Franks' hearing. But moving to the first legal issue, Franks held that in a limited ruling, in a limited holding, giving the defendant a limited right to challenge the veracity of statements made by governmental affiants in application for search warrants, that they must make the substantial preliminary showing, including a counteroffer of proof that the affiant presented materially false allegations deliberately or with reckless disregard for the truth. In this case, we did not have a governmental affiant. We had John Doe, who testified directly to the judge who made the determination that the search warrant established probable cause. The application established probable cause. Search warrant affidavits are presumed valid. So in this case, the defendant has the burden of showing that the affiant had to have deliberately lied or recklessly disregarded the truth in what he said. And the defendant has not been able to meet that factual burden in this case. John Doe stated that he bought drugs from the defendant in the morning on such and such a date. I believe it was April 6th. Defendant presented affidavits, presumably from disinterested parties, apart from himself. He had two other individuals testifying that, you know, the defendant was with me, we had lunch, I showed him around a health club. That's an alibi, right? An alibi. However, that alibi only covered one half hour of a 12-hour period. It was from 1130 to noon of the relevant time period. So defendant factually simply failed to make any kind of a substantial preliminary showing that the affiant was somehow lying or not telling the truth or made materially false statements. Therefore, the trial court did not abuse its discretion in denying the defendant's motion. General denials are not enough. And defense counsel mentioned the Cairo decision, which I understand Your Honor concurred in Justice Neville, but stated that we should follow Cairo because an alibi was given in both Cairo and in this case. And our position is, first of all, the alibi had giant gaping holes, a gaping chasm. And second of all, Cairo was decided in a totally different posture. There the court was reviewing the grant of the defendant's Frank's motion following an entire Frank's hearing. And we don't have that in this case. So actually the standard is somewhat different. Right. I mean the issue here is whether there was a substantial preliminary showing, correct? Correct. But we also took the position in that case that Frank's was limited to government witnesses too, didn't we? That Frank's was not limited. That's correct. And I don't think I'll back away from that position. Okay. In every single case in this district and in this state other than Cairo, including Frank's from the U.S. Supreme Court, the keystone to whether there is a Frank's issue is whether there was police misconduct. And the key word is police. So we're talking about governmental interference. This is not a case where the police officer was the only at the end. He was there, yes. He... Well, I don't know that there has to be police misconduct. I mean the Supreme Court in Ventresca, I know it's an old case, but Ventresca took the position that the defendant must make a substantial preliminary showing that there was a false statement knowingly and intentionally or with reckless disregard for the truth included in the warrant, the affidavit. And if the false statement is necessary, the finding of probable cause, et cetera, et cetera. But I mean the point is there has to be a showing, a substantial preliminary showing of this falsity or that's been made intentionally or with reckless disregard. And that's what you're taking the position is absent here. You're saying that the affidavits which lay out the alibi don't cover the time period completely. So there's not been a substantial preliminary showing. Right. But before we even get to that issue, that would be our fallback argument. But before we even get to that issue, I would like to address Your Honor's concern about whether there was governmental misconduct or whether that's even necessary to invoke Franks. And Franks is very clear. In Franks, the court said the deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant and not of any nongovernmental informant. Here we had an affiant who had really no ties to the police other than providing the information to the police, giving his factual rendition of what happened and how he bought drugs from the defendant on a particular day at a particular place. The entire Fourth Amendment deals with protecting individuals from governmental interference and here we don't have that. So to that extent, we would respectfully disagree with the Karo decision and rely on Gora Steata Phillips, the 10th District case of U.S.P. Owens, for our position. Regarding the chain of custody, if Your Honors have no further questions. Justice Neville, you made an observation that there was no evidence that the samples were tampered with in any way and that is true. The only thing the defendant was able to say was that... I didn't make the observation that they were not. I asked him if he had any evidence that they were. I don't have any personal knowledge of what happened. Okay, fine. So what came out of that discussion is that there was a blue powder that was detected by Dr. Kresge when he opened up the samples before testing and that the certain cannabis and certain cocaine was contained in a blue powder. Whether or not there was blue powder is not material. That's simply an added observation that Dr. Kresge made that was not critical to what the items that he tested actually were. He didn't test the blue powder. He tested the cocaine and the cannabis, which were consistent with what the police had seized and stated in their inventory sheets. The State need not present testimony and that's well established. This is a foundational issue, live testimony on each and every part of the chain of custody. Regarding the sufficiency of the evidence, I would simply turn the court back to the Jackson v. Virginia standard. The jury obviously rejected that there was a tie smith who planted the drugs or left the drugs in this department. The jury rejected the fact that, or rejected the defendant's and his wife's denials that they had ever had drugs or seen drugs in their apartment. So to that extent, taken in a light most favorable to the prosecution, this court should affirm. Thank you. Judge Neville, Judge Broussard, Judge Gallagher, your question was asked by the court. And in rebuttal for my closing, I'd like to have the opportunity to respond. I think that it was Justice Douglas who said, better nine guilty men go free than one innocent man be convicted. You asked about the question as to the veracity of testing in relative to the necessity of having an expert testify. Experts are like every other human being in our life. Some are well schooled, some are not. Some lack judgment, some have excellent judgment. When tests are conducted, all tests are subject to an individual's interpretation and, in fact, what they believe they saw or who they're trying to curry favor with. It's important under any circumstances relative to our system of justice and what's involved that experts like each be confronted under Crawford v. Washington, to be asked questions, to be asked to satisfy everything that's done relative to their testing procedures and what is necessary under the circumstances. The fact that somebody reads somebody else's notes, the fact that somebody says that something is okay because I've read it and I'm rendering my opinion based on what I believe somebody else may have, just doesn't cut it. Our government is a government of laws which require standards. Regardless of how one categorizes the interpretations of the chemists in this particular matter, that is a cornerstone of the conviction of Noel Christopher in this particular matter, because without that, that conviction can't stand. And by virtue of that particular matter, it isn't merely scientific opinion which is generated, but is brought before any juror or judge for the truth of the matter to be asserted. Individuals interpret gastroenterology tests differently, the computerization is a different standard. The graphs, the standards, the color test, the weights, the quantities, the colors are all subject to being interpreted by individuals. Nobody is infallible, nobody is perfect. So consequently, that is the basis of why we have these courts and the necessity of review. I would urge this court, after reviewing the totality of all the evidence that is involved, the law applicable, to reverse or in the alternative reverse the demand on behalf of Mr. Noel Christopher. Thank you. I'd like to thank both the defense and the state for a well-argued case. The briefs were extremely well-written. And we at this point will take the case under advisory. Thank you. Thank you.